The relief described hereinbelow is SO ORDERED.

Signed June 19, 2007.



_____
ROBERT D. BERGER
United States Bankruptcy Judge
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

**In re:**

| | |
|---|---:|
| **CHARLES DANIEL PALM and** | **Case No. 06-20551** |
| **TIA LIND BENSON-PALM,** | **Chapter 7** |
| **Debtors.** | |

### MEMORANDUM OPINION AND ORDER DENYING IN PART
### UNITED STATES TRUSTEE'S MOTION TO DISMISS

The United States Trustee's Motion to Dismiss Pursuant to Section 707(b)[1] is currently pending before the Court. The UST seeks dismissal first for presumed abuse under 11 U.S.C. § 707(b)(2). The UST secondarily seeks dismissal under 11 U.S.C. § 707(b)(3), alleging the totality of the circumstances demonstrates abuse. The parties have deferred the issue arising under the "totality of the circumstances" test pending the Court's decision on whether the case should be dismissed under the "presumptive abuse" test. The latter issue depends on whether Debtors may deduct monthly payments for secured debts related to a home and car when the

---

[1] Doc. No. 35. Debtors Charles Daniel Palm and Tia Lind Benson-Palm appear by counsel Eric C. Rajala. The United States Trustee ("UST") appears by Richard A. Wieland.

07.06.19 Palm.wpd

collateral is surrendered post-petition. Having examined the statute and reviewed the pleadings, the Court concludes Debtors are entitled to claim deductions for monthly secured debt payments even though Debtors intended to and did in fact surrender the property.

## Findings of Fact

Debtors filed for Chapter 7 relief on April 27, 2006. On the petition date, Debtors owned a residence and a Chevy Silverado, both subject to security interests. Debtors have since surrendered their residence and Silverado. The automatic stay has been lifted as to both.

Debtors are above-median income debtors. On their Statement of Current Monthly Income and Means Test Calculation ("Form B22A"), Debtors deducted monthly payments of $540.00 for the Silverado and $1,528.67 for the residence on account of future payments on secured claims. Debtors also deducted $38.70 for past due payments on the home mortgage. With these deductions, the presumption of abuse does not arise; however, if the deductions are removed, Debtors' filing is presumptively abusive.

## Conclusions of Law

Section 707(b) allows the UST, among others, to move for dismissal for abuse. For debtors with above-median current monthly income ("CMI"),[2] the presumption of abuse depends on the allowed deductions under § 707(b)(2)(A)(ii)-(iv). This "means test" deducts from CMI necessary expenses and payments for secured and priority debts in order to determine the monthly disposable income presumptively available to pay unsecured debt. The presumption of abuse can be found after applying § 707(b)(2)(A)'s formula without requiring proof of debtor's actual circumstances. Evidentiary questions may arise as debtors assert special circumstances to

---

[2] 11 U.S.C. § 101(10A).

07.06.19 Palm.wpd

rebut the presumption or when the finding of abuse is based on the totality of circumstances or debtor's bad faith. However, because presumptive abuse is found based on a statutory formula, judicial discretion is somewhat limited at this threshold determination, although some discretion is later employed in considering the debtor's particular financial circumstances.[3]

At issue in this case is the allowed deductions for secured debt provided for in § 707(b)(2)(A)(iii). Debtors are directed to calculate their average monthly secured debt payments as the sum of:

> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents . . . .[4]

These provisions divide debtor's secured debt into debt currently due (subclause (I)) and any debt in arrears (subclause (II)). Debtors then deduct the resulting 60-month averages from CMI. Subclause (I) allows a deduction for all secured debt which will come due in the next five years, without requiring the secured property be "necessary," while, in contrast, subclause (II) more specifically allows the arrears deduction only if the secured property is necessary for the debtor's support and the cure payments are required for the debtor to maintain possession.[5]

The plain meaning of the statute should be conclusive except in rare circumstances in which the literal application of the statute will produce a result demonstrably at odds with the intentions of the drafters.[6] As with so many issues since the adoption of the Bankruptcy Abuse

---

[3] *See, e.g.,* 11 U.S.C. § 707(b)(2)(B) and § 707(b)(3) which allow the Court to consider other factors apart from the statutory deductions in determining abuse.

[4] § 707(b)(2)(A)(iii).

[5] Eugene R. Wedoff, *Means Testing in the New § 707(b)*, 79 AM. BANKR. L.J. 231, 274 (Spring 2005).

[6] *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242 (1989).

Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the plain meaning of the statute is not easily discerned, with at least two, and often times more, plain meanings appearing to different readers.  In this case, Debtors argue the plain meaning does not require reaffirmation of the secured debt in order to take the deductions.  For the Debtors, it is enough that the payments on surrendered collateral were "scheduled as contractually due" as of the petition date.  The UST, on the other hand, argues the plain meaning requires Debtors to have real secured debt payments due in each month of the 60 months following the petition date before the deduction may be claimed.  The UST urges the Court to consider matters outside Form B22A, specifically the statement of intention, to determine whether payments will still be "scheduled as contractually due" in the 60 months following the petition date.

*In re Walker,* the first bankruptcy case to address the issue, concluded the deduction covered payments owed under contract at the time of filing.[7]  Noting the means test begins with the historical data of CMI, *Walker* determined expenses are calculated as they exist on the petition date.  The use of the word "scheduled" allows for the possibility that the payments may not actually be made.  Further, the presumption of abuse test is a formulaic threshold determination made as of the petition date.  To consider post-petition actions to be taken by the debtor would remove the distinction between the presumption of abuse test and the totality of the circumstances test.  *Walker* found the UST's position anomalous because it required the court to consider the impact of the debtor's ability to surrender collateral which is a remedy only available if the debtor is first entitled to bankruptcy relief.[8]  Thus, "scheduled as contractually

---

[7] *In re Walker,* No. 05-15010-WHD, 2006 WL 1314125, *4 (Bankr. N.D. Ga. May 1, 2006); *see also In re Nockerts*, 357 B.R. 497 (Bankr. E.D. Wis. 2006); *In re Galyon,* No. 06-11985-WV, 2007 WL 883394 (Bankr. W.D. Okla. March 22, 2007); *In re Hartwick*, 359 B.R. 16 (Bankr. D.N.H. 2007); *In re Hartwick,* 352 B.R. 867 (Bankr. D. Minn. 2006).

[8] *Id.*

due" must mean any debt the debtor is obligated to pay to secured creditors as of the petition date.

Courts adopting a contrary view have held "scheduled as contractually due" is a reference to the bankruptcy schedules, including the debtor's statement of intention.[9] Further, these courts attempt to carry out Congressional intent to ensure that those who can afford to repay some portion of their unsecured debts be required to do so.[10]

Based on a plain reading of the statute, "scheduled as contractually due" means the payments owed to secured creditors under contract as of the petition date. Exploration into whether post-petition events may impact the debtors' ability to pay some of their unsecured debt is better addressed under the totality of the circumstances test. To pass the initial threshold into bankruptcy relief, debtors deduct from CMI the amounts determined under clauses (ii), (iii) and (iv) of § 707 (b)(2)(A), with one noteworthy exception. The plain reading of the statute distinguishes between currently due secured debt and secured debt in arrears. Subclause (II) of § 707(b)(2)(A)(iii) specifically refers to payments "necessary to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents." Congress's failure to likewise limit subclause (I) not only supports the conclusion that all scheduled secured debt payments are included in subclause (I), but it also imposes additional criteria before the debtor may take a deduction for cure payments. The debtor must, under subclause (II), intend to keep the collateral, and the collateral must be necessary for support. Accordingly, secured debt payments allowed under § 707(b)(2)(A)(iii) are all secured debt payments to come due in the 60 months following the petition date and past

---

[9] *In re Skaggs,* 349 B.R. 594 (Bankr. E.D. Mo. 2006); *In re Harris*, 353 B.R. 304 (Bankr. E.D. Okla. 2006).

[10] *Id. (quoting In re Hardacre*, 338 B.R. 718, 725 (Bankr. N.D. Tex. 2006)).

07.06.19 Palm.wpd

due cure payments, but, as to the latter expense, only if the debtor intends to actually make the cure payments. In this case, the monthly $38.70 deduction for a mortgage cure payment which will never be made does not change the results of the presumptive abuse test.

### Conclusion

For the foregoing reasons, the United States Trustee's Motion to Dismiss based upon the presumption of abuse arising under 11 U.S.C. § 707(b)(2) is DENIED. The parties shall prepare for a final determination of the United States Trustee's Motion to Dismiss based upon the totality of the circumstances under 11 U.S.C. § 707(b)(3). A scheduling conference or evidentiary hearing shall be set by separate order.

    IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

-6-

07.06.19 Palm.wpd

Case 06-20551   Doc# 55   Filed 06/19/07   Page 6 of 6